UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CARLIS COMER,

    Plaintiff,

v.                                                         Case No. 2:09-CV-27-FtM-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## OPINION AND ORDER[1]

Plaintiff applied for a period of disability and disability insurance benefits on May 17, 2003 (Tr. 60-63), claiming disability as of March 30, 2001. On reconsideration, the Agency found the Plaintiff disabled as of January 1, 2003, but not before (Tr. 55-57). On October 21, 2005, an administrative law judge (ALJ) issued a decision affirming that Plaintiff was disabled as of January 1, 2003 (Tr. 303-13). This decision was remanded for further administrative action by the Appeals Council (Tr. 332-35)[2]. On August 17, 2007, a different ALJ issued a decision affirming that Plaintiff was not disabled from March 30, 2001, his alleged onset date, through January 1, 2003 (Tr. 28-41).

---

[1]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated July 7, 2010. (Doc.# 23).

[2]     In the remand order, the Appeals Council directed the ALJ [to] "(a) assess whether substantial gainful activity occurred, and/or (b) if no denial at the first step of the sequential evaluation is found due to work activity, continue the process by evaluating the doctor's report and other medical evidence, (c)The ALJ was ordered to note the 20 C.F.R. 404.1560(b) requirement that past relevant work have constituted substantial gainful activity."

On November 21, 2008, the Appeals Council accepted review and issued a decision affirming that Plaintiff was not disabled during the relevant period (Tr. 6-11). This case is now ripe for review and this court properly has jurisdiction over this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C.§ 405(g).

The Plaintiff is currently and has been receiving disability benefits since January 1, 2003. This case concerns only the period between 2001 and 2003.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda

For the reasons set forth, the Commissioner's decision is **AFFIRMED**.

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On May 7, 2003, Plaintiff filed his application for Disability Insurance Benefits alleging disability beginning March 30, 2001. The Decision of Administrative Law Judge Steven D. Slahta, dated August 17, 2007, denied Plaintiff's claim for expanded benefits. (Tr. 31-41). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of March 30, 2001 through his established onset date of January 1, 2003 (20 C.F.R. 404.1520(b) and 404.1571) and that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2006 (Tr. 32). At Step 2, the ALJ found that Plaintiff has had the following severe impairments: Degenerative Disc Disease and Degenerative Joint Disease, mainly of the hand. (Tr. 34). The ALJ found Plaintiff may have had mild depression, prostatic hypertrophy, and a hiatal herniorrhaphy. (Tr. 34). At Step 3, the ALJ found that during the period in question, the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526) (Tr. 34). At Step 4, the ALJ determined the Plaintiff had the residual functional capacity to perform the full range of light work in safe conditions, with the opportunity to alternate standing or sitting at will.

The ALJ found that through the established onset date, Plaintiff's past relevant work as a union representative did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity (Tr. 40). The ALJ found the testimony of the impartial vocational expert to be credible and found that the Plaintiff retained the residual functional capacity to perform his past relevant work (Tr. 40). Accordingly, the ALJ found the Plaintiff not disabled at any time from March 30, 2001 to January 1, 2003 (Tr. 41).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d at 1553, 1560 (11th Cir. 1995); *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. REVIEW OF FACTS AND MEDICAL EVIDENCE

Plaintiff was 62 years old at the time he was found disabled; he had obtained a general equivalency degree with some college course work (Tr. 60, 79, 541). Plaintiff reported his past relevant work experience as a millwright, union representative, and bar manager (Tr. 74, 97-104). Plaintiff testified that he helped with a family-owned bar and restaurant on occasion until the business was sold in December of 2002 (Tr. 559-60).

Plaintiff alleged that he could not perform any substantial gainful activity beginning on March 30, 2001, his alleged onset date, through January 1, 2003, the date he was found disabled (Tr. 28-41, 55-57). Plaintiff alleges disabling limitations during this period due to pain in his back and shoulders, degenerative disc disease, degenerative joint disease of the hands, status post hernia repair, and depression/anxiety (Tr. 60, 72-85, 88-93, 114-23, 346-49).

Dr. Papan

The record shows a first visit to Dr. Papan on February 14, 2002, where Plaintiff complained of pain in his neck, leg cramps, pain when walking, and fatigue (Tr. 187). Plaintiff reported to the nurse that he wanted a complete physical examination (Tr. 187). Dr. Papan's notes are very difficult to read but it appears that Plaintiff told Dr. Papan that he had severe arthritis in his shoulder and was utilizing Vioxx (Tr. 187). Plaintiff also stated that previously he had cluster headaches and that was taking Klonopin at a dosage of .25 mg.[3] twice a day. Dr. Papan's notes seem to state that Plaintiff told him that his "nerves are shot" (Tr. 187). The notes also seem to show that Plaintiff had previously been prescribed anti-depressants and that Plaintiff stated that he "rests better [with] Klonopin" (Tr. 187). The notes also refer to testicular pain when walking and kidney problems (Tr. 187). Dr. Papan made a list of impressions on page 188 of the record. The list includes cardiac issues, orchitis, cervical spine issues and one other item that is not clear. There does not appear to

---

[3] The record is inconsistent with respect to the dosage of Klonopin that the Plaintiff was using. Some of the records refer to .5 mg. and others refer to 5 mg. The Plaintiff submitted information about Klonopin to the Commissioner. (Tr. 538, 530) That information appears to show that Klonopin comes in dosages of .5 mg. , 1 mg., and 2 mg.

be **any** reference to depression or mental problems in Dr. Papan's notes for this visit.

Several weeks later on March 11, 2002, the Plaintiff returned to Dr. Papan to review laboratory tests (Tr. 183). At this visit Plaintiff complained of increased pain and soreness after jet skiing. Plaintiff reported that he had been stopped for DWI after having four beers (Tr. 183). Plaintiff also stated that he was having difficulty with his memory. Dr. Papan's notes indicate that he was referring Plaintiff to Dr. Carballosa for evaluation. Dr. Papan's notes have a question mark next to the word "dementia" (Tr. 183).

Dr. Carballosa

Ten days later on March 21, 2002, Plaintiff received a neurologic evaluation by Dr. Raul Carballosa a board certified psychiatrist and neurologist (Tr. 190-192). Dr. Carballosa's notes indicate that Plaintiff was referred because of "recurrent headaches, episodic dizziness and forgetfulness" (Tr. 190). Dr. Carballosa's report does mention that the Plaintiff has had other problems besides headaches including "difficulty with depression without suicidal ideas, hearing loss, occasional dizzy spells, ringing in the ears, [and] neck and low back pain (Tr. 190). The report also refers to a history of arthritis and anxiety. Dr. Carballosa performed a complete neurologic and physical examination and found the Plaintiff to be awake, alert, oriented in 3 dimensions with intact speech, language, and memory functions. He found no hallucinations or delusions (Tr. 191). Dr. Carballosa's impressions were that the Plaintiff had recurrent headaches, recurrent dizzy spells, and a subjective memory impairment, and in each case the etiology was to be determined. There was **no** finding by Dr. Carballosa of depression or significant mental malfunction.

The very next day, on March 22, 2002, Plaintiff was treated at Fawcett Memorial Hospital overnight for complaints of chest pain (Tr. 196-208). Plaintiff advised he was

widowed during the last year, smokes 1½ pack of cigarettes daily and drinks 4 to 6 drinks a day (Tr. 201). Cardiac findings were normal and again Plaintiff was advised to stop smoking and drinking (Tr. 199). Plaintiff's laboratory data revealed the Plaintiff's enzymes were negative. CBC was normal and his ETOH level was 201. The "IMPRESSIONS" section states that Plaintiff had risk factors including family history of tobacco abuse and alcohol abuse (Tr. 202). The EKG showed a mild 1-mm ST elevation in the anterior and lateral leads with no acute changes (Tr. 202). A chest x-ray revealed that Plaintiff's heart was not enlarged and the soft tissues and bony structures appeared unremarkable. There did appear to be mild emphysematous changes (Tr. 207).

On April 17, 2002, Dr. Carballosa had a follow-up neurological examination. Dr. Carballosa's report states that Plaintiff's headaches had dissipated and an MRI showed no acute findings and changes of chronic sinusitis (Tr. 189). Plaintiff complained of low back pain radiating to his lower extremities and pain in his thoracic spine. Dr. Carballosa's impression was that the Plaintiff had lumbar radiculopathy.

On April 17, 2002, Plaintiff returned to Dr. Papan for a follow-up visit. (Tr. 177). Dr. Papan's notes state that Plaintiff is being "seen by Dr. Carballosa re: work-up of dementia ..." (Tr. 177). Dr. Papan lists several areas of concern including 1. chest problems, 2. sleep apnea 3. (Illegible) and 4. Depression (Tr. 177) . Dr. Papan wrote that the medication Zoloft was "given" (Tr. 177) but the prescriptions on page 178 do not include that medication. The record includes a "Depression Self Quiz" (Tr. 180). It is unclear when this was completed and the ALJ noted the fact that it was "self-reported" (Tr. 36).

On April 23, 2002, an MRI of the lumbar spine revealed only mild degenerative changes with stenosis at L4-5 (Tr. 173). The MRI of the thoracic spine revealed

hemangiomas with no other abnormalities (Tr. 176). The arteriogram was normal with no significant atherosclerotic occlusive disease (Tr. 174).

On April 24, 2002, Dr. Raymond Vitullo, a cardiovascular specialist, evaluated Plaintiff and noted a normal electrocardiogram, with possible left atrial enlargement and no ischemic abnormalities (Tr. 228). Plaintiff's stress test was normal and he had a normal left ventricular ejection fraction of 66 percent (Tr. 228).

The record contains additional medical evidence, however, all of this evidence is dated after the Plaintiff's established disability onset date of January 1, 2003. In May of 2003, x-rays of the Plaintiff's left hand revealed mild degenerative changes of the MP joint and left thumb, and prior removal of the tuft of the left second finger and the distal phalanx of the left third finger (Tr.160). X-rays of the Plaintiff's right hand revealed mild degenerative changes with no significant arthritis Also no traumatic abnormality was evident (Tr. 161).

The Court notes that during August of 2005, continuing into 2006, the Plaintiff was treated by orthopedic surgeons from the Advanced Orthopedic Center (Tr. 509-514). Those records indicate that Plaintiff had continuing problems with his lumbar and cervical spine in addition to knee problems. Plaintiff did note improvement with his neck pain and range of motion but continued with back pain (Tr. 510). During May of 2006, Plaintiff reported to one of the orthopedic physicians that during a trip to Michigan he performed "a lot of work, especially yard work ... and he has exacerbation of his pain" (Tr. 409).

On April 27, 2005, Plaintiff visited Dr. V. Padmanabhan, complaining of shortness of breath, pressure in his chest, fatigue and "no energy". According to the doctor's report, Plaintiff recently had cardiac catheterization with angioplasty of one coronary artery (Tr.

298). The "PAST HISTORY" notes detailed many physical problems. There was no mention of depression. The doctors' report shows that Plaintiff was taking Klonopin at .5 mg at bedtime for insomnia and anxiety along with other medications. (Tr. 298-299).

Functional Capacity Assessments

On July 27, 2005, Dr. V. Padmanabhan completed a functional capacity assessment form on which he indicated that Plaintiff had postural limitations and manipulative limitations (Tr. 420-424). Dr. Padmanabhan noted that the specific facts on which he based his conclusions were "based on what patient states." The Plaintiff's assessment states that he had to avoid even moderate exposure to the elements, noise, fumes, machinery, and heights. Further, that Plaintiff could only work up to 1/3 of an 8 hour work day, due to inability to concentrate, follow or carry out simple instructions or the ability to deal with co-workers or changes to a routine work setting (Tr. 420-24). On the form, Dr. Padmanabhan checked a box indicating Plaintiff had been "disabled from substantial work since at least 3/2001" (Tr. 424). However, the record shows that Dr. Padmanabhan **first examined the Plaintiff in April of 2005** and that the Plaintiff underwent angioplasty that same month (Tr. 434-36).

On July 9, 2007, Dr. Sash Seshadri, a physician, treating Plaintiff for myalgia and related muscle and joint pain (Tr. 461-463) completed a medical source statement indicating that Plaintiff could not perform even sedentary level work (Tr. 450-58). Dr. Seshadri checked a box indicating Plaintiff had been"disabled since 3/30/2001" (Tr. 454). However, it should be noted that Dr. Seshadri first examined Plaintiff on **March 29, 2007** (Tr. 459).

At the administrative hearing held on July 29, 2005, Plaintiff testified that he co-owned a bar/restaurant in Michigan from 1999 until 2001 (Tr. 544, 555-57). The Plaintiff

reported traveling to Michigan very frequently until the business was sold in December of 2002 (Tr. 559-61). The Plaintiff confirmed he did not seek medical treatment in 2001 when his wife was sick (Tr. 546). The Plaintiff also stated that during the relevant period he was able to buy, renovate, and sell rental property, but he alleged that he did not personally perform renovation work (Tr. 560-66). At the administrative hearing held on July 11, 2007, Plaintiff confirmed that he worked as a union representative at General Motors for a three-year term from 1987-1990 (Tr. 581-82).

### III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW

#### A. THE RECORD CONTAINS SUBSTANTIAL EVIDENCE THAT CLAIMANT'S PAST WORK AS A UNION REPRESENTATIVE WAS "RELEVANT" PAST WORK

The Plaintiff argues that in both decisions the ALJ should not have considered the Plaintiff's past work as a union representative between 1987 and 1990. The Plaintiff contends this is contrary to the Commissioner's regulations and rulings (20 C.F.R. §404.1565, and SSR 82-62).

Under the Act, the Plaintiff bears the burden of proving that he could not perform his past relevant work. *Macia v. Bowen*, 829 F.2d 1009 (11th Cir. 1987); *Jackson v. Bowen*, 801 F.2d 1291 (11th Cir. 1986). Past relevant work is defined as work activity of a substantial gainful nature performed within fifteen years preceding adjudication for a period long enough to learn the job (20 C.F.R. 404.1545). If the Plaintiff can still do any of his past work, he will not be found disabled. See *Jackson*, 801 F.2d at 1293; 20 C.F.R. 404.1520(f).

Plaintiff's arguments regarding his past relevant work are not supported by the record. Plaintiff clearly testified that he was a full-time union representative from 1987-1990, and this was a separate job that he worked "off the floor" (Tr. 97-104, 581-82).

Plaintiff also reported that he had to sit, stand, and walk "as needed or required," but confirmed that he frequently only lifted "less than 10 pounds" (Tr. 99). This is consistent with the testimony from the vocational expert (VE), that Plaintiff's work as a union representative was a separate job, and was performed at the light, skilled level (Tr. 562, 592).

Plaintiff first argues that his work as a union representative was not "relevant past work" because it occurred prior to the 15 year look-back provision in Social Security Regulation (SSR) 82-62 (Brief pp. 3, 6, 7). The Plaintiff argues that SSR 82-62 sets forth a rigid rule of 15 years for the look-back period and uses the Appeals Council decision dated March 26, 2007 as the end date for the look-back period. The Plaintiff is incorrect in this interpretation of SSR 82-62.

SSR 82-62 uses language indicating flexibility in determining calculation of the 15 year period. It specifically states in part:

> "The following subsections describe how the relevant 15-year period will be determined. (1) When deciding whether a claimant is disabled under title II or title XVI, the 15-year period is **generally** the fifteen years prior to adjudication at the **initial, reconsideration at higher appellate level (emphasis supplied).** SSR 82-62.

The Ruling specifically allows flexibility in using the initial date, reconsideration date, or date of "higher appellate" adjudication. In the instant case, Plaintiff's initial application was in May of 2003 (Tr. 60-62). ALJ McKerney rendered her decision on October 21, 2005, (Tr. 306-313) based on Plaintiff's initial protective application date of May 7, 2003. (Tr. 306, 60-62). Plaintiff's work as a union representative ended in 1990. ALJ McKerney's decision dated October 21, 2005, was within, or very close to, the 15 year period specified by SSR 82-62.

The second subsection of the Social Security Ruling concerns how the 15 year period is calculated with respect to Plaintiff's last insured date. Plaintiff argues that there is no last insured date since Plaintiff was in "payment status and therefore is subject to the 'disability freeze'". (Brief pg. 6). Plaintiff does not explain how Plaintiff's payment status while he is receiving disability benefits eliminates his last date insured for purposes of the 15 year "look-back" provision of SSR 82-62. Plaintiff appears to argue that his last date insured disappears since he is now receiving benefits.

Plaintiff refers to the SSA's Program Operation Manual System (" POMS") section that concerns calculating a "freeze" date for a claimant who wishes to file a disability claim. It appears that this POMS section is designed to protect a claimant's last date of insurance by extending that date for the claimant. The POMS section does not support Plaintiff's argument. Plaintiff points to ALJ Slahta's comment that Plaintiff's union work may have been "concurrent" with his millwright work (Tr. 574). His comment was a casual comment **during** a hearing and it is unclear what document ALJ Slahta was looking at when he made the comment. The ALJ's comment is **not** a finding in his decision and this casual comment does not support Plaintiff's claims. As stated above, Plaintiff's own testimony **clearly states** that his union representative job was separate, full-time work from his millwright work (Tr. 582).

The relevant inquiry is not whether Plaintiff can perform his specific former job, but rather, whether Plaintiff can perform his former kind of work or occupation. *Jackson* 801 F.2d, at 1293. The Appeals Council clarified the ALJ's "RFC" finding and determined that Plaintiff would be able to perform light work with additional limitations including: work in safe conditions, with a sit/stand option, and limited to only occasional handling and

fingering (Tr. 9-11, 36-40). With this "RFC", the Appeals Council concluded that Plaintiff could return to his past relevant work as a union representative (Tr. 9-11). Therefore, the Appeals Council determined that Plaintiff could perform past relevant work and concluded that Plaintiff was not disabled pursuant to 20 C.F.R. § 404.1520(f) (Tr. 9-11).

Further, Plaintiff did perform work as a union representative within 15 years from the reconsideration decision issued on January 22, 2004, which found him disabled (Tr. 55-57). Thus, the work as a union representative was within 15 years from his adjudication finding him disabled at the reconsideration level." SSR 82-62 allows for past relevant work to be considered outside the 15 year period, in some cases, when a continuity of skills, knowledge,
and processes can be established. There is no evidence that the skills and abilities required of a union representative changed significantly such that Plaintiff could no longer perform the job. *Barnes v. Sullivan*, 932 F.2d 1356, 1358-59 (11th Cir.1991) (holding that, in this circuit, there is a "presumption of inapplicability" of skills and abilities acquired in work performed outside the fifteen year period) (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)(holding that the regulations "prohibit consideration of any job held more than fifteen years ago"). Substantial evidence supports the ALJ's determination that Plaintiff was able to return to his past relevant work. The record fully supports the ALJ's use of Plaintiff's union representative work as prior relevant work and there is substantial evidence to support the ALJ's conclusion of Plaintiff's ability to perform light work.

Mental Impairments

Plaintiff argues that ALJ Slahta erred when he concluded that Plaintiff did not have a

severe mental impairment prior to January 1, 2003. (Tr. 31-41)

This Court has reviewed the thorough and careful decision of ALJ Slahta and notes that the ALJ points to many aspects of the record that cast doubt on Plaintiff's claim of severe mental disability which would preclude light work. The ALJ points to many important facts in the record that show no mental problems that would have prevented substantial gainful activity prior to January 1, 2003. (Tr. 35, 36) There is substantial evidence to support the Commissioner's denial of benefits based on Plaintiff's lack of mental impairment severe enough to prohibit light work.

The ALJ referenced several parts of the record which show that Plaintiff did not have any severe mental dysfunction that would have prevented light work. These include:

(a) Dr. Raul Carballosa's findings that Plaintiff had normal neurological function (Tr. 34). The record shows that Dr. Carballosa is board certified in psychiatry and neurology and that Plaintiff's referral to Dr. Carballosa **was not for depression** but concerned memory issues, headaches, and dizziness (Tr. 190-192). Plaintiff's main complaints to Dr. Carballosa in March 2002 did **not** concern depression.

(b) The absence during 2001-2002 of any major psychological dysfunction (Tr. 36). Plaintiff was able to conduct substantial business activities in both Michigan and Florida. The record shows that Plaintiff made 22 trips to Michigan during one year (Tr. 559) and was actively buying, selling, and arranging for the rehabilitation of property in Florida.

Plaintiff argues that the ALJ misinterpreted or misunderstood the medical evidence since Plaintiff's mental impairment was severe enough to reduce his work capacity to unskilled work (Brief pg. 12). Plaintiff cites many portions of the record and claims that

these support Plaintiff's argument. A close examination of these references shows that they do not support Plaintiff's contentions. For example, Plaintiff claims that Dr. Papan treated him with Klonopin at a dosage of 5 mg. yet Dr. Papan's nurse's notes indicate Plaintiff was already utilizing Klonopin at .5 mg. per day and apparently had anxiety issues for many years.

Plaintiff argues that the ALJ did not take into account a statement submitted on behalf of Plaintiff from a friend of 20 years ( Brief pg. 18). The statement contained on page 96 of the record confirms that Plaintiff had anxiety attacks for many years "almost daily" but that Plaintiff's medication helped these attacks (Tr. 96). The Plaintiff himself stated that he had a "long history of [anxiety attacks] that occurred almost daily and that he uses Klonopin for this condition (Tr. 92). Although Plaintiff argues that Konipin was used to treat depression, (Brief pg. 14) this is not supported by the medical records. There is substantial evidence in the record to support the Commissioner's findings that Plaintiff did not suffer from severe depression in 2001 and 2002.

Plaintiff's brief argues that Dr. Papan included a diagnosis of dementia (brief pg. 13). The Court notes that the record shows a question mark next to the word "dementia" (Tr. 183). In addition, it is not clear that the medication Zoloft was prescribed by Dr. Papan for long term use rather than on a trial basis (Tr. 177-178). Plaintiff asks this Court to engage in medical speculation by numerous references to medical treatises and other medical literature to form conclusions about unconnected pieces of the medical records. Forming medical conclusions is not the function of this Court (or the ALJ) since the standard on review is whether there is substantial evidence to support the Commissioner's decision.

### Plaintiff's Testimony

During his testimony on July 29, 2005, (Tr. 536-568) Plaintiff commented on his physical and mental condition during 2001 and 2002. Plaintiff testified that he had back pain every day (Tr. 546) for which he took Darvocet and that his backaches limited his walking, sitting, moving, and bending (Tr. 547). Plaintiff also stated that he had depression because of his wife's terminal cancer and did not get medical attention since he was caring for his wife (Tr. 546). The Plaintiff did state that he took Klonopin for **anxiety** which he had very frequently but that his anxiety attacks did **not** limit his mental function (Tr. 550) ( **emphasis supplied**). Although Plaintiff was forgetful he did not forget important things (Tr. 546). According to Plaintiff he was treated by Dr. Carballosa for balance problems, headaches, backache, and for forgetfulness (Tr. 548-552). Plaintiff did not state that Dr. Carballosa treated him for depression.

Although Plaintiff argues (Brief pg. 14) that Dr. Carballosa's records show that Plaintiff was treated for forgetfulness and "difficulty with depression". His testimony and the record does not support this contention. Plaintiff argues that references by many physicians' to depression when they compiled Plaintiff's medical history translates into the fact that the Plaintiff had severe depression in the past. Plaintiff makes these arguments for Doctors' 'Salazar, Vitullo, Aristimuno, and for psychologists' Bernstein and Stevens. (Brief pgs.. 14-15). These references to Plaintiff's "past history of depression" are simply statements by physicians' about what Plaintiff told them. They are not medical findings or objective evidence that severe depression existed in 2001 and 2002. Plaintiff asks this Court to make medical judgments and conclude that if a certain medication was given, it must

have been given for severe depression. This argument is incorrect.

Plaintiff argues that SSR 83-20 which concerns "Onset Disability" shows that the ALJ's finding that Plaintiff's mental impairment "came after .... 2001-2002" (Tr. 17) is incorrect. Plaintiff claims that the ALJ should have considered more than the "absence of medical evidence". This argument is inconsistent, but even if applied the other evidence such as "claimant's testimony" and lay opinions still would not support Plaintiff's claim. Plaintiff was clearly able to function for the many years that he had anxiety attacks. His own testimony and the friend's statements demonstrate that the ALJ's finding of the absence of medical evidence was proper and is supported by substantial evidence.

Plaintiff's use of SSR 83-20 does not advance his cause. That Rule refers to **medical evidence of some disabling impairment**. Although the record does contain retrospective opinions of Dr. Padmanabhan and Seshadri, the ALJ properly noted that Dr. Padmanabhan is not a psychiatrist and his views about Plaintiff's mental function have "little clinical backing". The ALJ's rejection of these retrospective opinions by non-psychiatrists is supported by substantial evidence.

Although Plaintiff argues that Dr. Papan prescribed the medication Klonopin when the Plaintiff first visited Dr. Papan, this Court interprets the medical records otherwise. When the Plaintiff first visited Dr. Papan in February of 2002, the nurse indicated that Plaintiff **was presently using Klonopin** (Tr. 187). Other parts of the record confirm Plaintiff's long standing use of Klonopin for anxiety.

> B. THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD SHOWING THAT THE CLAIMANT DID NOT HAVE A SEVERE MENTAL IMPAIRMENT AT STEP TWO OF THE

## SEQUENTIAL EVALUATION PROCESS.

Plaintiff argues that there is ample medical evidence in the record that he suffered from both severe depression and anxiety in 2001-2002. Plaintiff refers to his treatment on February 14, 2002 with Klonopin .5 mg because his "nerves were shot" and his use of anti-depressants in the past, including Xanax (Tr. 187). Plaintiff argues that on April 17, 2002, Dr. Papan listed depression as one of several problems and referenced the medication Zoloft (Tr.177). Plaintiff refers to the depression self quiz on page 180 which states that he had little interest in things, felt down, depressed, had difficulty with sleep, felt tired with little energy, had poor appetite, felt bad about himself, had trouble concentrating on things like reading or TV, and had thoughts of suicide (Tr.180).

Plaintiff also refers to notes by a James LeVasseur, Ph.D. Clinical Psychologist who reported in 2004 affective disorder/anxiety disorder noting there was a past psychiatric admission in the 1960's as well as medication management per the treating physician that was ongoing (Tr. 288). Dr. Padmanabhan, a treating physician, provided his opinions that included severe mental limitations and he based these opinions upon records going back to 1998 (Tr. 508), concluding the following functions were impacted up to 1/3rd of the work day: concentration, following, carrying out, remembering, understanding simple instructions, using judgment, responding to supervision, coworkers, usual work situations, and dealing with changes in a routine work setting (Tr. 424).

To have a severe impairment the regulations state it only needs to have a significant effect on basic work activities such as understanding, carrying out, and remembering <u>simple instructions</u> 20 C.F.R. § 404.1521(a)(b)(3). On March 21, 2002, Dr. Carballosa reported forgetfulness for immediate recall occurring over the past few years and difficulty with

depression with a past history of anxiety for which he took Clonazepam (Tr.190). Dr. William Salazar and Dr. Raymond Vitullo also reported on March 23, 2002 a "past medical history of depression" (Tr. 201), treated with Klonopin. Dr. Joaquin J. Aristimuno reported on March 22, 2002 a past medical history of depression and sleep apnea (Tr. 204).

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on an individual's ability to function in the workplace, and the Commissioner's regulations adopt precisely this functional approach in determining the effect of medical impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (citing Heckler v. Campbell, 461 U.S. 458, 459-460 (1983)). The Appeals Council clarified the ALJ's decision and found that Plaintiff did not have a severe impairment due to depression during the relevant period (Tr. 9-11). At issue is whether Plaintiff can establish disability from March 30, 2001, through January 1, 2003, the date he was found disabled (Tr. 28-41, 55-57).

The medical evidence does not document any treatment until February of 2002, when Dr. Papan diagnosed Plaintiff with severe arthritis and made comments about Plaintiff's past use of anti-depressants (Tr. 187). In March of 2002, Plaintiff complained of memory problems and depression; however, Dr. Carballosa only diagnosed him with a "subjective memory impairment (etiology to be determined)" (Tr. 192). Although Dr. Papan prescribed anti-depressant medication, Plaintiff did not have significant complaints related to depression (Tr. 151,157, 177-78). The Appeals Council's conclusion that Plaintiff did not have a severe impairment due to depression during the relevant period (Tr. 9-11) is fully supported by substantial evidence in the record.

Further, Plaintiff was never dismissed from any of his employment for either incompetence or for poor social relations and was able to continue his intensive business

activities until he quit for physical reasons. The record shows that Plaintiff had decades of remission before apparently redeveloping the (moderate) Major Depression and Panic Disorder without Agoraphia that was diagnosed in late summer of 2003. Substantial evidence in the record supports the finding that Plaintiff did not suffer from any psychiatric dysfunction in 2001-2002.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C.§405(g). The Clerk of the Court is directed to enter judgment dismissing this case and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this  13th  day of July  2010.

_____
Gustave J. DiBianco
United States Magistrate Judge

Copies furnished to:
All Counsel of Record